William T. Pettit, Sr., and Christine M. Pettit v. Commissioner.
Pettit v. Commissioner
Docket No. 78564.
United States Tax Court
T.C. Memo 1960-130; 1960 Tax Ct. Memo LEXIS 159; 19 T.C.M. (CCH) 679; T.C.M. (RIA) 60130; June 20, 1960
*159 Respondent's determination of additional income sustained in part and reversed in part. W. Davis Parker, Esq., for the petitioners. Richard W. Roe, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1956 in the amount of $913.94. The issues are whether the respondent erred in including in petitioners' taxable income for the year 1956 as additional compensation within section 61(a), I.R.C. of 1954, an amount of $4,216.23 *160 [1] as allegedly representing life insurance premiums paid by Wm. T. Pettit and Sons Company, Inc., on the life of petitioner William T. Pettit, Sr., and an amount of $375 representing expenditures by the same corporation on a personal residence owned by the corporation and occupied by petitioners during the period of the expenditure. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioners are husband and wife who resided in Youngstown, Ohio, from 1929 to June 1, 1956, and in Venice, Florida, thereafter. Petitioners filed a joint income tax return for the calendar year 1956 with the district director of internal revenue for the district of Florida. Wm. T. Pettit and Sons Company, Inc. (hereinafter called the corporation) is an Ohio corporation. It is engaged in the steel fabricating business and maintains its principal office in Youngstown. From its inception in 1947 to January 18, 1954, it had 138 shares of capital stock outstanding, 100 shares of *161 which were owned by petitioner William T. Pettit, Sr. (hereinafter called petitioner). On January 18, 1954, a 100 per cent stock dividend was declared and during the taxable year petitioner owned 200 of the 276 shares outstanding. The remaining shares were owned by petitioner's wife, two sons, and a workman. During 1956 petitioner received the sum of $5,200 from the corporation, which amount was designated as salary and which was reported by petitioners as such on their joint return. The respondent added to the taxable income as disclosed by the return as "Other compensation" an amount of $4,591.23 which he explained in a statement attached to the deficiency notice as follows: "It has been determined that you received from the W. T. Pettit and Sons Company, a controlled corporation, additional compensation within the purviews of section 61(a) of the Internal Revenue Code of 1954 in the amount of $4,591.23; of which $4,216.23 represents life insurance premiums paid by the corporation on your life with the beneficiary being the Estate of W. T. Pettit, Sr.; and $375.00 of the amount representing expenditures paid by the same corporation on a personal residence *162 owned by the company and occupied by you during the period of the expenditure." In 1955 petitioner borrowed from Acacia Mutual Insurance Company an amount of $3,954.76 which he in turn loaned to the corporation with the understanding that both principal and interest were to be paid to Acacia Mutual Insurance Company by the corporation. The corporation repaid $231 of the principal in 1955, together with interest of $60.49. In 1956 the corporation repaid $400 of the principal, together with interest of $205.68. The respondent included the $400 and $156.96 of the interest paid in 1956 as a part of the amount of $4,216.23 mentioned in the above explanation taken from the statement attached to the deficiency notice. During the years 1953 through 1956 the corporation paid to the Acacia Mutual Insurance Company premiums on life insurance policies taken out by petitioner for the benefit of his wife or his estate in amounts as follows: 1953
$ 3,285.95
1954
3,452.43
1955
3,811.68
Subtotal
$10,550.06
1956
3,659.27
Grand total
$14,209.33
Aside from the 1955 Acacia loan heretofore mentioned, petitioner and his wife made loans to the corporation on dates and in amounts *163 as follows: Loans by Petitioner
Year
Amount
1954
$2,333.70
1954
1,250.00
$3,583.70
Joint Loans
1948
$ 1,000
1948
660
1950
1,000
1953
3,000
$ 5,660
Loans by Wife
1947
$ 4,699
1948
400
1952
200
1953
2,925
1953
1,200
1954
250
1956
4,500
$14,174
On January 2, 1954, the corporation issued a note to Christine M. Pettit for $7,200, payable on or before one year with interest at 4 per cent. This note was to cover the greater part of the loans made by the wife prior to January 2, 1954. On March 12, 1956, the corporation issued a note to Christine M. Pettit for $4,500, payable on demand, with interest at 4 per cent. This note was to cover the loan made by the wife in 1956. The respondent included in petitioner's taxable income for 1956 as "Other compensation" the life insurance premiums paid by the corporation in 1956 of $3,659.27, together with the $400 of principal and $156.96 of interest paid by the corporation in that year direct to Acacia Mutual Insurance Company. The payments by the corporation in 1956 of premiums totaling $3,659.27 on life insurance policies taken out by petitioner for the benefit of his wife or his *164 estate constituted income to petitioner during that year rather than repayments of loans made by petitioner to the corporation. The payments by the corporation in 1956 of $400 of the principal of the $3,954.76 loan made in 1955, together with $156.96 of interest paid thereon, did not constitute taxable income to petitioners. In 1950 the corporation acquired a cottage at the corner of its factory building. It was decided among the stockholders of the corporation that petitioners should occupy the cottage for the protection of the property in the corporation's interest. The cottage was unsuitable for rental purposes. Petitioners moved into the cottage in 1951 and occupied it until May or June 1956. In so doing, petitioner performed for the corporation, in addition to his services as president and member of the board of directors, the additional services required of a night watchman. During 1956 the corporation made expenditures on the cottage in the amount of $375. The respondent included these expenditures in petitioners' taxable income as "Other compensation." The amount of $375 was not taxable income to the petitioners. Opinion The issues herein are primarily factual and have *165 been resolved in our findings. The respondent included in petitioners' taxable income as "Other compensation" an amount of $4,591.23. We have found from the evidence that $556.96 ( $400 plus $156.96) of this amount represented repayments by the corporation of loans and interest. These repayments of loans and interest are not taxable income to petitioners. Regarding the $3,659.27 of premiums paid by the corporation in 1956 to the Acacia Mutual Insurance Company, we sustain the respondent's determination for lack of evidence showing the determination to be in error. It was orally stipulated that the books and records of the corporation "do not contain any loans or account payable accounts to the petitioners * * *." Notwithstanding this stipulation we have found from the evidence that during the years 1948 through 1954 certain loans were made by petitioner individually totaling $3,583.70 and by petitioners jointly totaling $5,660. But the total of these loans ($9,243.70) is less than the premiums paid by the corporation for the years 1953, 1954, and 1955 in the total amount of $10,550.06. Therefore, it would appear that these loans, totaling $9,243.70, were more than repaid prior *166 to the taxable year in question. The evidence also shows that the corporation, by paying $231 in 1955 and $400 in 1956 on the principal of the Acacia loan, is repaying that loan direct to Acacia separate and apart from the premiums, so that no part of the payments of the 1956 premiums could be said to be a repayment to petitioner of the $3,954.76 loan made by petitioner to the corporation in 1955. Regarding the $375 of expenditures made by the corporation on its own property, it is our opinion that this was either a capital expenditure or an expense deduction on the part of the corporation and was not taxable income to petitioners. Since the respondent did not include the amount in petitioners' income as representing the fair rental value of the cottage, it follows that section 119 of the Internal Revenue Code of 1954, relied upon by respondent in his brief, has no application. Decision will be entered under Rule 50. Footnotes
1. This amount is made up of three items as follows: ↩
Life insurance premiums
$3,659.27
Repayment of loan
400.00
Interest on loan
156.96
$4,216.23